NEW YORK COUNTY.—HON. D. C. CALVIN, SURROGATE.—
October, 1879.

### ARCHER v. FURNISS.

*In the matter of the estate of* LEON FURNISS, *deceased.*

Upon an application for the payment of a judgment recovered against the decedent, the Surrogate has power to inquire whether any such judgment exists.

A transcript of the judgment is no legal evidence of its existence in such a case. The only proper proof is the judgment-roll itself.

The judgment-roll must show the jurisdiction of the court. Unless it contains proof of service of the summons, or of appearance by the defendant, there is no proof of jurisdiction, and no proper evidence of the existence of the judgment.

A judgment-roll of another court, from which proof of the jurisdictional facts has been omitted, cannot be cured by affidavits read in the Surrogate's court.

APPLICATION for the payment of two judgments alleged to have been recovered in the Marine Court against the decedent in his lifetime.

The facts appear sufficiently in the opinion.

H. B. PHILBROOK, *for petitioner.*

C. E. & D. B. OGDEN, *for executrix.*

THE SURROGATE.—On a former motion, wherein it was objected that it did not appear that the judgments had ever been docketed, or that the said Marine Court had jurisdiction, it was held, that the jurisdiction would be presumed, and that the recitals thereof in the judgment-rolls were conclusive, and an order was directed for the payment of said judgments. Subsequently the executrix obtained an order to show cause why the decision aforesaid should not be opened, and the matter re-heard.

This application was based upon the affidavit of one of her attorneys, stating that after the decision aforesaid he searched diligently for the judgment-rolls in the clerk's office of the Marine Court, and finally found them ; that said rolls failed to show that the decedent was ever served with process, or appeared in said actions in the Marine Court, and that neither of said judgments are against decedent, but against his co-defendant solely. An affidavit of a clerk of the Marine Court is annexed, stating that he had examined the transcripts annexed to the former moving papers, and annexes exemplified copies of the judgment, but that the date, February 14, 1862, of filing is erroneous, and should have been February 13 ; that the reason the transcripts show a judgment of a larger amount than is named in the judgment-rolls is, that when so entered it was the practice of that court to add the costs to the amount of judgment, after the judgment-rolls had been made out, and filed, and that the transcripts annexed to the former order were taken from the judgment-book in which judgments in said court are entered in the order of their recovery ; and that when said judgments were obtained, said court had no docket in which said judgments were entered alphabetically under the name of the judgment debtors ; that the indorsement of the judgments upon the rolls was the regular way of entering judgments at the time. First, is a bill of costs and record of judgment in Archer *v.* Vernam and Furniss, defendants, which states that the summons was returned, served on defendant Vernam August 24. That on the 30th of the same month is an entry, " 30th August. Defendant does not appear," and under the same

date, " Inquest by default before the clerk," and " Judgment for plaintiff against defendant Vernam." Also schedule "D" bill of costs, and record of judgment, same title. On January 9, "Summons returned, served on defendant in person." That on the 11th, an entry of " Plaintiff appears. Defendant appears. Tried before Justice McCarthy. Judgment for plaintiff, against defendant." Then follows a complaint in one of the actions, together with the summons, the summons directed to the defendant, and the affidavit of service of summons upon defendant Vernam. On the back of this summons the proof of service is entered, and title of the cause is " Archer *v.* Vernam. Adjourned 30th August. Answer. Demands a jury. Judgment for plaintiff against defendant Vernam $326.90 and costs, with $7 allowance." Next is annexed a lease by Archer to said Vernam and Furniss jointly ; then follows the answer of Vernam to the complaint ; then follows a complaint by same against same, with summons annexed, together with affidavit of service upon defendant Vernam, and indorsed on that is the title of the cause. " Adjourned as to defendant Vernam—demands a jury. Judgment for plaintiff against defendant for $330.68 and costs, with $12 allowance."

By way of answer the petitioner presents a transcript of the judgment, February 13, 1862, for $349.12, which appears to be against both defendants ; and an affidavit of Henry H. Grefe, that he knew the parties defendant in the action. That in 1861 and 1862 the defendants were salt merchants in this city, and that deponent was employed in the office of the plaintiff, who rented a portion of the premises to the defendants. That he was employed to serve a summons on the defendants in the

action in the Marine Court in August, 1861. That he did serve Vernam and afterwards went several times to serve Furniss and finally succeeded. One Swart swears that several years ago Archer, the plaintiff, employed him to collect two judgments against Furniss, and he made two transcripts of the judgments, and called upon Furniss, who told him that as Archer had made him trouble, and sued him, he would not pay ; that he had large amounts of money, but witness could not find it, and that he said that Archer had judgment against him, and he might collect. Archer swears that he is the plaintiff in the two suits and the husband of petitioner. That the defendants rented premises of him for three years, ending May 1, 1862, at $1,400 for the first two years and $1,300 for the last. That the rent was not paid for the last year and that it now amounts to about $3,000, and that the suits in question were for the first two quarters rent of the first year. That at the commencement of the last suit, the defendants had failed and discontinued business. That in the first he directed Grefe to serve the summons and complaint, who afterwards said he had served Vernam, and he was then instructed to serve Furniss, which he reported he had done. That in the second suit he employed his brother, Washington Archer, to serve the summons, and was informed by him that he went to Stryker's Bay to serve him, and was ordered out of the house. That he has no knowledge of the service of this summons, except that one Canteen appeared in the suit for both defendants, and adjourned the case ; and the case was afterwards tried, and said Canteen defended both defendants, and afterwards signed himself as attorney for them on notice of

appeal, and judgment was announced against both de-fendants. That they both repeatedly admitted that the plaintiff had judgment against them, and that the omission of an affidavit of service on Furniss in the first suit occurred from the negligence of plaintiff's attorney.

The documentary evidence in this matter fails to show that the defendant Furniss was ever served with process in either of the actions in the Marine Court, and they also fail to show any appearance by the defendant, Furniss. It is, therefore, quite clear that no judgment was authorized to be entered against him, which could affect his separate property, and from the records themselves it does not appear that the judgments were in form against the defendants, but only inferentially. But if it shall be presumed from the requirements of the statute that the judgment was against them jointly, the question arises whether the judgment is worth anything so far as the separate estate of the decedent is concerned.

It is argued by petitioner's counsel that, under the statute, it was the duty of the court to enter the joint judgment, and that it is proper to presume that the court did its duty and entered it accordingly. Even if that be so, it does not, in my opinion, aid the petitioner in this proceeding; for it is instituted to enforce the payment of the judgment, as against the individual property of the decedent, the joint debtor not served, which under no law or principle of right, can be permitted.

The rebutting affidavits of the petitioner show that in one of the cases the defendant, whose estate is now sought to be charged, was served with the process, and that in the other he appeared by attorney. His appearance seems not to have been entered, and the only evi-

dence of appearance is the affidavit of the plaintiff in the suit. This is not very satisfactory evidence, coming, as it does, from a layman and a party to the proceedings, who states no facts which justify the conclusions that it amounted to an appearance. It is claimed by the petitioner's counsel that the transcripts of the judgment in question are conclusive upon this court, and that the judgment should not be inquired into or discredited by an examination of the judgment rolls. It seems to me quite clear that the transcript of a judgment is no legal evidence of its existence. There is no statute making it evidence in such a case as this, though it is made sufficient evidence to require the clerk of another county to docket it. (See Baker *v.* Kingsland, 10 *Paige*, 366 ; Lansing *v.* Russell, 3 *Barb. Ch.*, 325.) As the later judgment of February 13, 1862, by the certificate of the county clerk, seems to have been regularly docketed in the clerk's office, and as the view I entertain of the case does not necessarily involve it, I do not deem it necessary to pass upon the question whether the entry of the judgment in the Marine Court, as certified on the former hearing on this motion, amounts to a docket under the statute.

It is claimed by the petitioner's counsel that this court has no power to inquire into the regularity of a judgment entered in another court, and numerous authorities are cited to that effect. Such undoubtedly is the true interpretation of the law, but I am entirely clear that it is my duty to inquire *whether there is any such judgment*, and that as the only legal evidence of such judgment is the judgment roll itself, I must examine the records to see whether there is, in fact, any judgment against the

decedent. Upon such examination, it is quite apparent that the judgment rolls respectively do not show any authority to enter the judgments in said actions against the decedent, except as against the joint property of the defendants and individual property of the defendant served.

But the next and more difficult question is, whether the apparent defects in the jurisdiction of the court over the decedent, the defendant, can be supplied by proof *aliunde* the judgment rolls. None of the numerous cases cited by petitioner's counsel seem to me to aid him in his motion. The case of Mors *v.* Stanton (51 *N. Y.* 649), and the other cases cited in connection with it, settled the rule that an appearance by a defendant, either personally or by attorney, is a waiver of any defect in the service of a summons. I entertain no doubt that such appearance waives the necessity of serving upon the party, for he submits himself to the jurisdiction of the court. But that is not the question in this case. So as to the case of Stilwell *v.* Carpenter (59 *N. Y.* 414), and other cases cited to the same effect. It is clear that the Surrogate has no authority to interfere with the judgment entered by a court of competent jurisdiction. But certainly, when a judgment is sought to be proved before him and is the basis of proceedings, it is his duty to inquire as to the existence of any such judgment, and the proper mode of inquiry is an examination of the judgment-record. I think no lawyer will pretend that the service of process or appearance of the attorney are not necessary to afford the court jurisdiction of the parties, and that the judgment-record should show that jurisdiction. This is not shown in evidence in this case, although affidavits are furnished tending to

show the service in one case, and the appearance in the other. As to the pretended service, it does not appear that the fact came to the knowledge of the court; and the allegations of appearance are quite too uncertain to base a judicial action thereon. I am of the opinion that the judgment-records in this matter do not show that the court obtained jurisdiction of the decedent so as to enable it to enter judgment against him, and that that defect cannot be supplied by affidavit in this court; for that would practically be a reformation of the judgment of another court over which this court has no jurisdiction. If any amendment of the record can be made it is obvious that it cannot be done by this court.

For the reason that it does not appear that the petitioner is the assignee of any judgment against the decedent, entitling her to payment out of this estate, the motion must be denied.

Ordered accordingly.